## Williams' Estate

*Williamson & Cupp*, for petitioners.

CRICHTON, P. J., October 25, 1944.—The history of this matter was briefly reviewed by us in our opinion on the demurrer of these petitioners to the petition of Soldiers & Sailors Memorial Hospital for leave to

intervene. For the purpose of this present opinion and order we will, however, here repeat said review.

Charles S. Green, formerly of Tioga County, Pa., died testate on March 27, 1911. By the provisions of his will, which was duly admitted to probate on April 6, 1911, he directed the erection of a trust for the purpose of creating and maintaining a home to be known as "The Green Home" for aged and infirm white persons of good moral character of both sexes, women preferred. This provision of his will was duly executed, and the said home has been in existence and operating for a number of years.

Virginia O. Williams, late of Wellsboro, Tioga County, Pa., died June 14, 1932. Her will was duly probated June 28, 1932. By one of the provisions thereof she created a trust fund to be used for the purpose of establishing and founding a charitable home "in the dwelling I now own and occupy, and on the lot and adjacent grounds contiguous thereto, under the name, style and title of 'Henry W. and Sarah E. Williams Home for Aged Women.' " By her said will she also appointed Andrew B. Dunsmore and Mrs. Bertie F. Merrick, both of Wellsboro, Tioga County, Pa., as her executors and trustees. Said Andrew E. Dunsmore died some years ago, and Mrs. Merrick has continued the administration as surviving executrix and trustee. On April 3, 1944, she filed her third and final account. This account has been confirmed, but no distribution has been ordered by the court, nor during the 12 years of the administration has there been any attempt, so far as the record shows, to execute the trust or even to have the trust funds distributed to the trustee as such.

On May 20, 1944, the trustees of The Green Home and the surviving executor and trustee of the estate of Virginia O. Williams presented this petition, citing the terms of the two wills above mentioned, averring that after the necessary preliminary expenses the income from the proposed Williams trust would be insufficient

and inadequate to carry out effectively and efficiently the purposes expressed by the donor, and praying the court to make an order empowering the executrix of the Virginia O. Williams estate and the trustees of The Green Home to carry out the purposes of the trusts in the manner and to the extent that the court shall deem proper. The petition does not aver that The Green Home is unable by reason of insufficient income to continue its work, and counsel specifically disavow any intention to aver such insufficiency.

The petition is founded upon the alleged authority of the Act of May 4, 1933, P. L. 271, 10 PS §16, section 1 of which provides as follows:

"That whenever two or more trusts for charitable or benevolent purposes have been established, or shall hereafter be established, by the same donor or testator, or by separate donors or testators, and for any cause or reason the income from the trust estates set apart for the purposes of the trusts is insufficient or inadequate to carry out effectively and efficiently the purposes expressed by the donors of the trusts through separate administration of the trusts, and the charitable or benevolent purposes of the trusts are of a nature that they may be more effectively and efficiently carried out if the same are combined, the trustees of the trusts may, in their discretion, join in a petition to the orphans' court having jurisdiction over the accounts of any one of the trustees setting forth such facts, and the court being satisfied with the truth thereof, may order and empower said trustees to carry out the purposes of the trusts by combining the trusts in the manner and to the extent that such court shall approve, provided that such combination shall not be authorized where it would violate any specific provision to the contrary in the will or other instrument creating the trust."

It does not appear that our courts have ever been called upon to interpret this statute—at least we find no reported case. It therefore becomes necessary for us

to review briefly some of the historical principles applicable to charitable bequests, and the disposition thereof.

A definitive decree to the effect that a valid trust for charitable purposes is directed by the will of Miss Williams, fixing the amount of the fund after any prior claims have been satisfied, and ordering its distribution to the trustee named is a necessary prerequisite to the exercise of authority thereover by said trustee: Hickman's Estate, 308 Pa. 230, 236; Carson's Estate, 241 Pa. 117, 120; Sheets' Estate, 215 Pa. 164, 167. This necessity is particularly emphasized in the present instance by the possibility that at distribution it may be asserted that there is here no valid gift for charitable purposes by reason of interest on the part of one of the witnesses. We do not now express an opinion on this question, but it is obvious that it must be answered and that it can be answered only after a hearing of which all interested parties have had notice and at which they have had opportunity to present their claims. It follows that while Mrs. Merrick, either as executor or trustee, is bound still to conserve the fund, her trusteeship has not matured to the extent that she has power to execute the trust or to pray for any action with reference thereto except a decree in distribution. She holds the fund subject to the determination by the court of its status under the law and its final disposition. It is clear that had she attempted to proceed with the erection of the charity without such decree she would have done so at grave risk to herself from the claims of others who might appear and demand audit of such claims or contest the validity of the gift. It follows that, in the absence of a judgment of the court declaring the existence of the trust, this petition is premature. This conclusion, of course, will not preclude petitioners from filing a similar one should the fund be distributed at the audit to Mrs. Merrick for the purpose of the trust.

At this point we might rest by dismissing the petition, but since after careful consideration we are of the opinion that other reasons demand its dismissal we shall review those reasons now and so clear the record as much as possible for audit and distribution. We had originally intended to hear testimony on distribution and on this petition at the same time, but since we have concluded that the petition is premature and therefore must be dismissed we deem it well to discuss and set forth herein our further reasons for our order, which we believe demand the dismissal, even if the action of petitioners were not premature. We are moved so to do all the more because the proceeding is ex parte, and the duty devolves upon the court to scan the petition to the end that questions may have due attention that would probably be raised by counsel were there other and adverse parties on the record.

We assume, therefore, for the purposes of this opinion, that the averments of the petition are true. We go further and assume for the same purpose that we have before us a valid gift for charitable purposes. That gift cannot be put into effect according to its exact tenor because of insufficiency of the fund provided. How shall it be disposed of?

It is ancient doctrine, almost universally accepted in America, that once a valid gift for a charitable purpose is shown that gift shall not be allowed to fail because of insufficiency thereof or because of any other reason making literal compliance with the terms impossible, but that the fund will be applied to another use as near as possible to the use determined by the donor: Curran's Estate, 310 Pa. 434, 445. This is the cy pres doctrine. In the United States it has been applied very generally by the equity courts. But we must not conclude that it is solely the function of courts to dispose of such funds. The legislature has jurisdiction thereof if it chooses to act. It was so held in Hamilton v. John C. Mercer Home, 228 Pa. 410, 420, where our

Supreme Court quoted the Supreme Court of the United States in Mormon Church v. United States, 136 U. S. 1, 59, as follows:

"The true ground is that the property given to a charity becomes in a measure public property, only applicable as far as may be, it is true, to the specific purposes to which it is devoted, but within these limits consecrated to the public use, and become part of the public resources for promoting the happiness and well-being of the people of the state. Hence, when such property ceases to have any other owner, by the failure of the trustees, by forfeiture for illegal application, or for any other cause, the ownership naturally and necessarily falls upon the sovereign power of the state; and thereupon the court of chancery, in the exercise of its ordinary jurisdiction, will appoint a new trustee to take the place of the trustees that have failed or that have been set aside, and will give directions for the further management and administration of the property; or if the case is beyond the ordinary jurisdiction of the court, the legislature may interpose and make such disposition of the matter as will accord with the purposes of justice and right. The funds are not lost to the public as charity funds; they are not lost to the general objects or class of objects which they were intended to subserve and effect. The state, by its legislature or its judiciary, interposes to prevent them from dissipation and destruction, and to set them up on a new basis of usefulness, directed to lawful ends, coincident, as far as may be, with the objects originally proposed."

There can be little question, therefore, that the Legislature of Pennsylvania was well within its powers in enacting the statute here involved. But since the statute involves a drastic interference with the donor's power over his property, and since the legislature here is exercising jurisdiction over a subject matter which has more generally been left in the hands of the court, we must inquire carefully into the terms of the enactment.

In other words, recognizing the legislature's power, we must be diligent to determine how far it has chosen to use that power. Specifically, does it authorize the action here requested under the circumstances surrounding this case?

First let it be observed that to show jurisdiction under the act it must be made to appear that both trusts "have been established". There can be no doubt that, taking the averments of the petition as true, The Green Home has been established. But we are not prepared to reach the same conclusion as to the charity proposed by the Williams will. Petitioners seem to be of the opinion that the very terms of that instrument establish the trust. With this we cannot agree. The will creates a trust fund to be applied to a certain purpose, but it should not be so applied until the court has decreed the validity of the gift and its amount and has awarded it to the trustee. It is to be noted also that the donor made the bequest "for the purpose of establishing and founding a charitable Home", etc., and proceeded to direct how the machinery should be set up to put the bequest into effect. So far as the petition and the record show, no step has been taken by the executrix and trustee looking toward accomplishing the objects of the donor, although the latter died in 1932. This is probably due to the disparity between the fund and the financial necessities of the scheme proposed by the will. In other words, the trust has failed to an extent which will warrant the court in exercising its jurisdiction under the cy pres doctrine when it is before us for distribution. Therefore it is legally quite possible that there may never be a decree awarding the bequest to the trustee under the will for the purposes therein mentioned. Assuming that donor has created a trust fund for charitable purposes, we cannot know until distribution what objects will benefit. The charity has not been established.

"To establish a company for any business means complete and permanent provision for carrying on that

business": Davidson v. Lanier, 4 Wall. 447, 18 L. Ed. 377, 379.

Further, paragraph 16 of the Williams will clearly indicates donor's intention that the trust shall not be regarded as established until the executors shall have filed their final account and shall have made deeds for the real estate and assignments of the personalty to the corporation to be erected. Then and not until then are they to be discharged. The fact that before making such deed and assignment a decree in distribution is legally necessary in no way affects the meaning to be drawn from the testator's directions. The record shows that no decree has been entered, no deed drawn, no assignment made, no corporation erected.

Again, the legislative enactment does not seem to provide that it may be invoked when only one of the trusts cannot be carried out by reason of insufficiency of funds. It speaks solely of "trusts" and not of "either trust", and "the purposes expressed by the donors", not "donor of either trust". It is not contended by petitioners that The Green Home cannot carry on without this fund. Indeed, as pointed out hereinbefore, the opposite position is taken by them. They found the prayer solely upon the inability of the Williams trust to organize and proceed successfully. Perhaps the legislature might under such circumstances have authorized the absorption of the Williams trust by the Green trust, but it did not do so. Yet it is perfectly apparent that this is exactly the purpose of the petition, covered though it may be by the use in the prayer of the general terms of the act. Taking as true the averments of paragraphs 19, 20, 21, and 22 of the petition it is, of course, impossible to establish and operate the proposed Williams Home with the funds available from her trust, and there is no proposal that funds of The Green Home be used for that purpose. Paragraph 22 of the petition clearly indicates that it is absorption that is contemplated, not combination. No plan of combination has

been presented to us, but it is obvious that if The Green Home has submitted itself to our jurisdiction under this statute it is legally within the court's power, if the circumstances warrant, so to combine the resources of these charities that they shall be made effective in Wellsboro rather than at Roaring Branch, or perhaps at both places. We take it that no such result is contemplated by The Green Home, but we cannot escape the dilemma. Either the Green charity has submitted itself to the court for the exercise of such discretion, or this is not a petition to combine the charities, but for a decree directing transfer of the Williams property to the Green fund. Such was certainly not the intent of the statute, and our exercise of jurisdiction thereunder and under the circumstances here presented would merely amount to applying the power we always had under the cy pres doctrine, with the added condition that no other charity shall be allowed to compete with The Green Home for the gift. We conclude that since both trusts do not bring themselves within the terms of the statute the petition is insufficient.

Again, we observe the positive provisions of the will of Miss Williams directing the use of her home for the purposes of the gift, and the creation of a memorial to her mother and her distinguished father. While we do not now hold that these provisions are more compelling than her general charitable intent, nevertheless they are provisions that should not be violated under any dubious authority, especially in view of the direction of the statute that the combination shall not be authorized where it would violate any specific provision to the contrary in the will or other instrument creating the trust. We observe, further, the differences between the conditions of the two gifts. Under the Williams will the beneficiaries are to be women, residents of Tioga County, while in the Green will they may be men and women, residents of Tioga, Lycoming, and Bradford Counties. Other such variances exist, but it is unneces-

sary here to point others out. They lead to the same conclusion—that this petition invokes a remedy seeking violation of the terms of the will with very doubtful authority so to do. On the other hand, at a hearing for distribution, The Green Home may invoke the cy pres doctrine, and the court, acting under authority much broader than the statute here under consideration, if it finds this a valid charitable gift, after hearing all parties interested, may frame and decree the execution of a reasonable and equitable scheme by which this gift may be disposed of to the greatest advancement of the objects of the donor.

### *Conclusions of law*

1. The Act of May 4, 1933, requires the establishment of both trusts before it may be invoked.

2. Accepting the averments of the petition as true, they are legally insufficient to show establishment of the Williams trust within the meaning of this statute.

3. This statute is effective only when the income from each of the trusts is insufficient to carry out effectively and efficiently its purposes.

4. This statute was not intended to afford a substitute for a decree in distribution.

5. The cy pres doctrine is the proper recourse of a going charitable trust which desires to benefit from the funds of another such trust that has failed.

6. A decree in distribution under the circumstances is a prerequisite to active exercise of any authority over the fund other than to preserve it for such disposition as the court shall direct at distribution.

7. A decree of distribution may not be entered except after due notice to all who may deem themselves interested to appear and be heard.

8. This petition is premature and unauthorized by law when filed and now.

### *Order*

Now, October 25, 1944, the petition is dismissed.