Thomas O. YOUTSEY, Jr., Appellant,

v.

COUNTY DEBT COMMISSION et al.,
Appellees.

Court of Appeals of Kentucky.

Nov. 9, 1973.

Richard S. Nelson, Covington, for appellant.

Spencer E. Harper, Jr., Grafton, Ferguson, Fleischer & Harper, Louisville, for appellee, County of Kenton, Kentucky and Bond Counsel for the Transit Authority of Northern Kentucky.

David A. Schneider, Hughes, Clark & Ziegler, Covington, for the Transit Authority of Northern Kentucky.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Deputy Atty. Gen., Frankfort, for appellee, The County Debt Commission of Kentucky.

William K. Bodell, Counsel for Executive Dept. for Finance and Administration of Kentucky, Frankfort, for appellee, State Local Finance Officer of Kentucky.

CULLEN, Commissioner.

At the November 1972 regular election the voters of Kenton County, Kentucky, approved a bond issue which was submitted for approval or rejection in the following ballot question:

"Are you in favor of the incurring by Kenton County, Kentucky, of an indebtedness in the principal sum of $3,-100,000.00 by the issuance of General

Obligation Bonds, for payment of which with interest, the full faith, credit, resources and taxing power of Kenton County would be irrevocably pledged, said Bonds to be issued for the purpose of providing to the Transit Authority of Northern Kentucky a portion of the funds necessary to enable said Transit Authority of Northern Kentucky to acquire and establish a public mass transportation system by the acquisition of transit facilities, the acquisition of new buses and equipment to serve the general public, and the subsidization of transit operations at no increase in current fares for a minimum of five (5) years, and to defray all expenses in connection therewith?"

The validity of the bond issue thereafter was placed in issue by a taxpayer, in proceedings which culminated in a judgment of the Franklin Circuit Court holding the issue valid. The taxpayer has appealed from that judgment, asserting (1) that the governing statute does not authorize the issuance of bonds to obtain money for *operating expenses* of a transit system as distinguished from *acquisition costs,* and (2) that the use of bond funds to subsidize low fares is not a public purpose but is rather a discrimination against landowner-taxpayers.

The Transit Authority of Northern Kentucky was established by joint action of Kenton, Campbell and Boone Counties pursuant to an Act of the 1970 General Assembly compiled as Chapter 96A of the Kentucky Revised Statutes, the purpose of which Act was to authorize cities and counties to provide publicly owned mass transportation facilities, through "transit authorities."

In KRS 96A.020(1) it is provided that a transit authority "shall be authorized to promote and develop mass transportation in its transit area, including acquisition, *operation* and extension of existing mass transit systems; and an authority shall have and may exercise such powers as may

be necessary or desirable to carry out such purposes" (our emphasis). Plainly the authorization embraces operation. The appellant maintains, however, that, bond proceeds cannot be used to pay operating expenses because KRS 96A.120, which provides for the issuance of bonds, mentions only "the purposes of acquiring or otherwise establishing * * * transit systems." The appellant argues that "acquiring or otherwise establishing" does not include operating.

It is our opinion that when the background of the Act and its obvious purpose are considered, the words of KRS 96A.120 cannot reasonably be given the narrow construction contended for by the appellant. It is a matter of common knowledge that in recent years most privately operated local transit systems throughout the country have found it impossible to produce enough revenue to pay operating expenses, with the result that many have discontinued business or have managed to survive only through subsidies from public funds. An example is the Green Lines in northern Kentucky, which terminated its operations in November 1972. It is clear that the General Assembly, in authorizing cities and counties to enter into the mass-transportation field, did not contemplate that public management would be so much more efficient than private management as to accomplish what private management could not, i. e., operate local transit service on a self-sustaining basis. The General Assembly could not have failed to realize that subsidization of operating costs would be required. In fact, the Act would be a practical futility if subsidization were not authorized.

If the words in question of KRS 96A.-120 were given the meaning contended for by the appellant, there would be a bar not only against use of voted bond funds to pay operating costs, but against the use of any funding source other than revenues, because the words in question state the purpose of use for proceeds of appropriations, revenue bonds and mortgage bonds

as well as voted bonds. It is unreasonable to consider that such could have been the legislative intent.

The word "establish" has been held to include continuance of operation of a company as well as the initial setting up. See Davidson v. Lanier, 4 Wall. 447, 455, 71 U.S. 447, 455, 18 L.Ed. 377. In the context of KRS 96A.120, we think it has that meaning.

There is no question here of the voters' being misled, because the ballot question plainly stated that the bond proceeds could be used for the subsidization of transit operations.

The appellant's second contention, as he states it, is that the use of bond funds to subsidize low fares "is not a public purpose but rather a discrimination against the landowner-taxpayer." We construe this as an argument that the proposed use of the funds *not only* is not for a public purpose but *furthermore* is discriminatory.

It occurs to us that the providing of low-cost mass transportation services fulfills a public purpose not only in promoting the economy in areas of employment and commerce through facility of travel, but also in reducing traffic congestion, air pollution, and the excessive devoting of land to automobile-related uses, caused by the proliferating use of individual automobiles. The construction and maintenance of streets, which are simply a form of transportation facility, have always been considered to serve a public purpose. If providing the streets on which vehicles travel is a public purpose, then why not the providing of vehicular passage over those streets?

The power of cities to run and operate bus lines, street railways, and subways, when authorized by statute, has achieved wide-spread judicial recognition. See 63 C.J.S. Municipal Corporations § 1054, pp. 680 to 682. The fact that in so doing a city acts in a "proprietary" capacity rather than a "governmental" one does not deprive the operation of the character of a public service. See Chrisman v. Cumberland Coach Lines, Ky., 249 S.W.2d 782.

We note that as long ago as 1924 the Kentucky General Assembly authorized a class of Kentucky cities to acquire and operate streetcar, street minibus and taxicab systems. See KRS 96.189.

This court has held it to be a public purpose for a county to acquire and operate a river steamboat for recreational purposes, Boone v. Cook, Ky., 365 S.W.2d 100; a city to acquire a factory building for lease to private industry, to promote employment, Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80; and a city to acquire and operate an inter-city bus line to promote the general economy of the city, Chrisman v. City of Cumberland Coach Lines, Ky., 249 S.W.2d 782.

As far as concerns the element of subsidization by providing service at less than cost, we do not conceive that the public purpose is any less served simply because public funds are required to be used to defray part of the operating costs as well as acquisition costs. We think a completely *free* service could be provided (just as the use of the streets is free), with the public funds paying *all* of the operating costs, and the public purpose still would be served.

We conclude that the proposed project here in question does serve a public purpose.

There is no merit at all in the argument that the subsidization of low fares constitutes a discrimination against the landowner-taxpayer. The substance of the argument is that it is unfair to make the property owners (whose property will be subjected to ad valorem taxes to pay off the bonds for the transit system) pay for part of the cost of transporting nontaxpayers. In effect the argument is that tax benefits must be proportioned equally to tax burdens, an argument that has no support in judicial decision, and which this court flatly has rejected. See Jefferson County v. King, Ky., 479 S.W.2d 880.

Taxpayers long have carried the burden of nontaxpayers, and it could not be otherwise if government is to render public service.

The judgment is affirmed.

All concur.