76 N.J. Super. 1 (1962)
183 A.2d 706
THE FIRST NATIONAL BANK OF WHIPPANY, APPELLANT,
v.
TRUST COMPANY OF MORRIS COUNTY AND CHARLES R. HOWELL, COMMISSIONER, DEPARTMENT OF BANKING AND INSURANCE, RESPONDENTS. THE FIRST NATIONAL IRON BANK OF MORRISTOWN, APPELLANT,
v.
TRUST COMPANY OF MORRIS COUNTY AND CHARLES R. HOWELL, COMMISSIONER, DEPARTMENT OF BANKING AND INSURANCE, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1962.
Decided July 26, 1962.
*3 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. David A. Friedman argued the cause for appellant, The First National Bank of Whippany (Mr. Sido L. Ridolfi, attorney).
Mr. Grover C. Richman, Jr., argued the cause for appellant, The First National Iron Bank of Morristown (Messrs. Richman and Berry, attorneys).
Mr. Worrall F. Mountain, Jr., argued the cause for respondent, Trust Company of Morris County (Messrs. Jeffers and Mountain, attorneys).
Mr. Alan B. Handler, Deputy Attorney General, argued the cause for respondent, Charles R. Howell (Mr. Arthur J. Sills, Attorney General, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
The First National Iron Bank of Morristown (Iron Bank) and The First National Bank of Whippany (Whippany Bank) appeal from an order of Charles R. Howell, Commissioner of Banking and Insurance (Commissioner), granting respondent Trust Company of Morris County (Trust Company) permission to establish a branch bank in Morris Township.
On February 4, 1957 Trust Company filed with the Department of Banking and Insurance an application for *4 permission to establish such branch. Supporting data and information accompanied the application, and supplemental materials to establish compliance with N.J.S.A. 17:9A-20 were filed on May 1, 1957.
Other banks in the area were notified of the proposal and appellants Iron Bank and Whippany Bank filed protests to the application, and later briefs in objection thereto. Basically the objections disputed Trust Company's analysis of the supporting information which it had filed and asserted that the branch would invade territory adequately serviced by the objectors.
In July 1958 Trust Company amended its application to designate a different site for the proposed Morris Township branch. Appellants again filed objections as well as additional information in support of their positions. Subsequently Assistant Deputy Commissioner Wesner conducted a study and survey of the new site and the surrounding area.
A formal hearing was held on January 8, 1959 at which all parties were represented. No formal adjudication was made by the Commissioner, but after another hearing and an interchange of a series of letters an agreement was reached by the three banks in February 1959, whereby for a period of two years Trust Company consented to forego the processing of its application, and Whippany Bank and Iron Bank agreed to refrain from making any application to the Comptroller of Currency for permission to establish a branch bank in Morris Township.
In August 1959 Whippany Bank applied to the Comptroller of the Currency for permission to establish a branch bank in Hanover Township, at a location approximately 1 1/2 miles from the site proposed in Trust Company's application. Although objections alleging a breach of the spirit and intent of the moratorium agreement were promptly asserted by Trust Company and the Commissioner, the application was approved by the Comptroller in January 1961.
*5 On September 25, 1959 Trust Company reactivated its branch bank application, and thereafter renewed that application at intervals of approximately three months through June of 1961. On September 7, 1961 the Commissioner notified Trust Company that the application would be processed and requested additional data, mainly concerned with the public need for the branch, and the economic potential of the institution, present and future. Notification of the proposed action was sent to the appellant banks. The requested information was furnished by Trust Company on questionnaires filed with the Commissioner on February 16, 1961, and July 17, 1961, and by supplementary data contained in a letter of transmittal of the first noted questionnaire.
Both objectors requested another public hearing. The Commissioner declined the request, but agreed to hold an informal conference with counsel. At the conference, which was held on August 7, 1961, the objectors were advised that the Commissioner had in his possession all data necessary to a determination. However, they were given the opportunity to examine all information on file and were permitted to furnish in writing specific reasons why a formal hearing was necessary or desirable. No such reasons were submitted.
On September 1, 1961 the Commissioner filed a decision in which he evaluated at some length, and in considerable detail, the arguments contained in the briefs of the parties as they related to the information on file, and made specific factual findings in support of his conclusions that the establishment of a branch bank would serve the public interest, and that it was reasonably to be expected that the branch could be operated successfully.
Additionally, the Commissioner drew attention to an argument advanced by the Whippany Bank to the effect that he may have been influenced in favor of the application because he was "provoked" by Whippany's application to the Comptroller of the Currency for a branch bank during *6 the period of the moratorium. The Commissioner frankly stated that he was of the opinion that Whippany Bank violated the intentions of the parties as expressed in their moratorium agreement, but went on to say that his determination was based "entirely on whether the facts permit this application to meet the standards set forth in the statutes (N.J.S.A. 17:9A-20)," and that the actions of Whippany Bank had not influenced his conclusions in any way.
On this appeal Whippany Bank contends that: (1) the Commissioner misinterpreted the law when he determined that he was not required to hold the public hearing requested by the objectors; (2) if the controlling statute (N.J.S.A. 17:9A-20, supra) does vest discretion in the Commissioner to deny a hearing, it is unconstitutional under Art. I, par. 1, of the New Jersey Constitution of 1947; and (3) if the statute is constitutional, and the Commissioner does have discretion to grant or deny hearing, denial in this case constituted abuse of discretion.
Iron Bank urges that: (1) the Commissioner abused his discretion by refusing to hold a public hearing on the application; (2) the determination was the result of capricious or extralegal considerations; and (3) the decision was based mainly on an erroneous premise that the operation of the branch bank would tend to foster legitimate and desirable competition.
While Whippany Bank argues that it was entitled to a public hearing as a matter of constitutional right, it is clear that the law is otherwise. In a comparable context involving a branch office application of a savings and loan association, the Supreme Court in Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N.J. 488, 505 (1957) said:
"The objecting institutions, however, urge they are entitled to a notice of hearing and the status of a party to the proceeding with the broader review which that status would afford. There is no constitutional basis for this further claim; if it exists, it is only because of a statutory provision for it."
*7 See also the same case reported at 30 N.J. 190, 192 (1959).
We are concerned, therefore, only with whether the Commissioner is obliged to grant a hearing if one is requested under the statute. N.J.S.A. 17:9A-20 provides:
"Before any branch office shall be established, except those branches established pursuant to paragraph (1) of subsection B of section 19, the bank or savings bank shall file written application in the department for the commissioner's approval thereof. If, after such investigation or hearings, or both, as the commissioner may determine to be advisable, he shall find
(1) that the bank or savings bank has complied with the requirements of section 19,
(2) that the interests of the public will be served to advantage by the establishment of such branch office, and
(3) that conditions in the locality in which the proposed branch office is to be established afford reasonable promise of successful operation,
the commissioner shall, within ninety days after the filing of the application, approve such application." (Emphasis supplied)
Laying aside the fact that the statute in unambiguous terms provides alternatively for an investigation or a hearing, or for both, preliminary to the ultimate determination of whether the interests of the public will be served to advantage by the establishment of a branch office, and whether conditions in the locality in which the proposed branch office is to be established afford reasonable promise of successful operation, the history of the legislation negates the idea that the Legislature had in contemplation a compulsory hearing of the adversary type. No hearing was provided for in the branch banking statutes until L. 1929, c. 294, which provided:
"The commissioner shall conduct a hearing at the time and place so fixed and afford an opportunity to be heard to all those desiring same."
The statute also provided that an independent examination could be made by the Commissioner for use in arriving at his decision. Subsequent legislation limited the necessity *8 to specified situations. L. 1931, c. 418. In 1944 the establishment of branch offices by bank and trust companies was authorized by an act which provided:
"* * * the commissioner may approve the application immediately and without notice and make it effective upon such date as he may fix and determine * * *." L. 1944, c. 30. (Emphasis added)
Against this background the revision of the Banking Law was enacted in 1948 providing that upon application for an original charter by a bank or savings bank a full hearing shall be conducted, N.J.S.A. 17:9A-10, but for the establishment of a branch office the necessity for investigation or hearings was left to the Commissioner's discretion, N.J.S.A. 17:9A-20.
The pattern of the legislation, considering the objectives to be attained, serves to bring in focus the generic quality of the discretion invested in the Commissioner, i.e., whether it was to be exercised quasi-judicially, or legislatively, as regards the granting of a hearing. The distinction between these respective areas of discretion is clear, and evolves from the nature of the proceeding ceded to the administrative officer. If the proceeding be one which essentially is designed to settle disputes between private parties as, for example, those arising under the Workmen's Compensation Act (R.S. 34:15-1 et seq.), or disputes between private parties and the State in which the right to cross-examination inheres, credibility of witnesses is involved, and weight of evidence is determinative, such as are exemplified in proceedings under the Civil Service Act (N.J.S.A. 11:1-1 et seq.), quasi-judicial authority is conferred upon the hearer which necessitates a hearing, if due process requirements are to be met. On the contrary, where the Legislature constitutes an administrative official as its alter ego, it is merely carrying out its exclusive function to establish public policy in fields in which the public interest is the primary object to be served and individual interests are only incidentally affected. In *9 such circumstances the discretion conferred is legislative, as contrasted with quasi-judicial and the public hearing of the incidentally affected interests is not requisite to compliance with due process requirements, since no basically adversary proceeding is involved.
The business of banking so intimately affects the commercial welfare and business interests of the people as to render it a proper subject of regulation by the State. Bank of Italy v. Johnson, 200 Cal. 1, 12, 251 P. 784, 788 (Sup. Ct. 1921); see In re Mechanics Trust Co., 119 N.J. Eq. 141, 153 (Ch. 1935). One does not have a right to engage in the business of banking; indeed, all banking is a matter of legislative grace. Bank of Italy v. Johnson, loc. sit. The Legislature has seen fit to deputize the Commissioner with the authority to act for it in the matter of the creation and regulation of banks and banking. His acts in that regard are subject only to meeting the same standard of reasonableness as would be the case if the Legislature itself undertook the performance of this duty. It thus becomes clear that where, as here, he is invested with discretion to grant or deny an application for a branch bank after investigation or hearing or both, the reasonableness of his determination should be measured entirely by the standards fixed by the Legislature for the establishment of the branch bank. In fixing these standards the obvious emphasis is pointed at benefit to the public and not at any advantage to a banking institution by the applicant or established objectors. Application of Howard Savings Institution of Newark, 32 N.J. 29, 48 (1960).
We think it plain that this emphasis on the public interest as the crucial consideration, excludes the idea that a quasi-judicial hearing of subsidiary adversary interests was contemplated by the Legislature. To put it another way, we are convinced that while the development of the views of objectors to the application, whether they be other banks or other persons or entities, might be of aid to the Commissioner in arriving at his ultimate determination of *10 whether or not the public interest would be served by granting the application, it was not intended that the reasonable exercise of his legislative power should be hampered by a quasi-judicial proceeding which would go off on the byway of determining the "rights" of objectors. In sum, we are of the view that the objectors have no individual "rights" in the processing of the application, hence they have no absolute right to a hearing.
Moreover, as already noted, the Commissioner at the time he declined to grant the hearing because the information before him and arguments thereon had ripened the matter for consideration, offered the objectors the opportunity to present in writing their reasons for contending that a hearing was necessary. The offer was not accepted at the time and we find nothing now presented to us which supports the contention that the Commissioner abused his discretion in acting as he did. Specifically, the appellants make no showing that had a hearing been conducted, proof additional to the information already in the Commissioner's hands which they were free to examine and criticize, had it been adduced, might have tended to impugn the basic finding of the Commissioner that the application fully complied with the legislative objectives of N.J.S.A. 17:9A-20. Neither in their briefs nor on oral argument have applicants shown, concretely, how they have been prejudiced by the failure of the Commissioner to hold a public hearing.
Our examination of the record satisfies us that the Commissioner's ultimate conclusions were adequately supported by the facts. The information and data upon which he acted, and which were supplied by the applicant and the objecting banks, were plenary and completely informative. And we find no substance in the argument that the decision was motivated by antipathy toward Whippany Bank. Whether in common thinking there was, or was not, reason for the Commissioner to be "provoked" by the action of the Whippany Bank in applying to the Comptroller *11 of the Currency for a branch bank during the life of the moratorium agreement, we accept without question the Commissioner's statement that this occurrence did not in any way influence his judgment.
Lastly, we are satisfied that a complete exposure of the factual complex in which the Commissioner acted required the inclusion in the appendix of the material printed by Trust Company. The printing costs will, therefore, be assessed against appellants.
Affirmed.